**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**
**WESTERN DIVISION**

|  |  |
|---|---|
| UNITED STATES OF AMERICA and the STATE OF CALIFORNIA, | Case No. 22-cv-04168-SVW-GJSx |
| *Ex rel.* CA CHALLENGER LLC, | **[PROPOSED] STIPULATED ORDER GOVERNING THE PRODUCTION OF ELECTRONICALLY STORED INFORMATION AND HARD COPY DOCUMENTS** |
| Plaintiffs | |
| vs. | |
| EMANATE HEALTH and EMANATE HEALTH HOSPICE, | |
| Defendants. | |

The Parties hereby submit the following Stipulation and Order Governing the Production of Electronically Stored Information and Hard Copy Documents:

## 1.    GENERAL GUIDELINES

1.    **Purpose.** This Order Governing the Production of Electronically Stored Information and Hard Copy Documents ("ESI Order") will govern discovery of electronically stored information ("ESI") and hard copy documents in the above-captioned action (the "Litigation") as a supplement to the Federal Rules of Civil Procedure ("Federal Rules") and Local Civil Rules for the U.S. District Court for the Central District of California ("Local Rules"), and any other applicable orders and rules.

2.    **Scope.** Except as specifically set forth herein, this ESI Order does not: (a) alter or affect the applicability of the Federal Rules or any Local Rules; (b) address, limit, determine, or affect the relevance, discoverability, or admissibility as evidence of any document or ESI,

regardless of whether the document or ESI is to be preserved, is preserved, or is produced; or (c) alter or affect the objections to discovery available under the Federal Rules.

      3.     **Variations.** If any Producing Party identifies a circumstance where application of this ESI Order is not technologically practicable or possible, the Producing Party will disclose to the Requesting Party the reasons for, and circumstances surrounding, the need to vary from this ESI Order, and the Parties will meet and confer in an effort to reach agreement on an appropriate deviation from this ESI Order. In the event the Parties cannot reach agreement, the matter may be submitted to the Court for determination.

      4.     **Transparency and Cooperation.** The Parties acknowledge their duty to work together cooperatively throughout the discovery process and permit an appropriate level of transparency. Consistent with their obligations under the Federal Rules and Local Rules, the Parties will endeavor to cooperate in good faith and be reasonably transparent in all aspects of the discovery process.

**B.**     **DEFINITIONS**

      1.     **"Party"** or **"Parties"** means Relator and/or Defendants Emanate Health and Emanate Health Hospice (collectively, "Emanate" or "Defendants").

      2.     **"Producing Party"** means the Party producing Documents in response to any Request for Production of Documents pursuant to Fed. R. Civ. P. 34(a) or for any other reason.

      3.     **"Request for Production"** means Documents requested pursuant to Fed. R. Civ. P. 34(a), or for any other reason.

      4.     **"Requesting Party"** means the Party requesting Documents in any Request for Production of Documents, or receiving Documents in response to any Request for Production of Documents, pursuant to Fed. R. Civ. P. 34(a), or for any other reason.

5.      **"Third Party"** or **"Non-Party"** means any person or entity other than the Parties.

## C.    PRESERVATION

1.      Consistent with their obligations under Federal Rule 26(f), the Parties will continue to meet and confer regarding the scope of preservation, including custodians, data sources, date ranges, and categories of information.

## D.    IDENTIFICATION AND COLLECTION OF DOCUMENTS AND ESI

1.      **Custodians.** The Parties will agree upon an initial list of custodians (or present disputes to the Court), which will be subject to the Producing Party's ongoing good faith efforts to identify the custodians most likely to have relevant information. In addition to the custodian identity, the Parties will disclose each custodian's job title, departments, and the locations and custodial data sources that are likely to contain potentially relevant or responsive information, whether or not created or generated by the custodian. The Parties agree that for those custodians who are former employees of a Producing Party, the Producing Party will similarly disclose custodial data sources that are likely to contain potentially relevant or responsive information that are available. The Parties agree to work together in good faith to prioritize and sequence the custodial productions and agree that these documents should all be produced with sufficient time to review prior to the custodian's deposition. The Parties agree to take any unresolved disputes on same promptly to the Court.

2.      **Non-Custodial Sources.** Following the exchange of any necessary additional information relating to any identified non-custodial source, the Parties will agree upon an initial list of non-custodial sources or present any disputes to the Court.

3.      **Obligation to Supplement.** The Parties will supplement pursuant to their obligations under Federal Rule of Civil Procedure 26(e).

4.     **Collection and Processing of ESI.** Each Producing Party shall use methods of collection and processing that preserve the integrity of document metadata, and of parent-child and family group relationships.

5.     **Known Relevant Documents and ESI Must Be Produced.** Documents or ESI known to be responsive to a discovery request or relevant to the subject matter of this litigation shall be produced or logged regardless of whether they are responsive to any search methodology described herein or developed in accordance with this ESI Order. This paragraph does not require Producing Parties to produce duplicative documents.

6.     **Targeted Collections**. If a Party is aware or a custodian has indicated that there is a population of relevant or responsive documents ("targeted collection"), the Producing Party will not apply search terms or any other content-based filtering to cull or limit the scope of the documents from the targeted collection.  If the Producing Party believes the review of the targeted collection without the application of search terms is not reasonable or proportional, the Parties shall meet and confer regarding searching and production of the targeted collection.

7.     **Search Queries and Methodologies.** The Parties shall meet and confer on the application, if any, of search or other filtering technologies, including search terms, file types, date ranges. The Parties are expected to work in a cooperative, collaborative, and iterative manner in this regard. To the extent the Parties cannot reach agreement on the application of, or procedures for, any search or filtering processes, the Parties shall raise such issues for resolution by the Court.

   a. Producing Parties do not plan to use technology-assisted review, machine learning, or any comparable manner of artificial intelligence (collectively "TAR"), commonly known as "predictive coding," to identify or cull documents

to be reviewed or produced. If a Producing Party intends on using such technology to identify or cull documents to be reviewed or produced at any point in the litigation, the Producing Party will notify the Parties in advance to discuss an appropriate TAR protocol for that type of review.

b.  The Parties shall meet and confer on search terms. After reaching initial agreement on search terms, a party shall have the right to propose modifications of the proposed terms as well as additional search terms. Each party reserves the right to oppose any such proposed modifications or additions.

c.  Defendant will provide a Relativity Search Terms Report ("Hit Report"), or a report containing the same information as contained in a Relativity Search Terms Report if the search conditions would require multiple Relativity STRs, as applied against each deduplicated document collection. The Hit Report will also include: the total number of documents in the de-duplicated collection against which the search terms were applied; the total number of unique documents containing hits; and the total number of unique family members, including the documents with hits, of the unique documents with hits.

d.  Nothing in this ESI Order may be construed or interpreted as precluding a Producing Party from performing by any means, a privilege review of documents determined to be responsive.

8.  **Validation of the Parties' Search Methodology and Results.** The Parties shall participate in an iterative and cooperative approach in which the Parties will meet and confer regarding reasonable and appropriate validation procedures of the Parties' documents.

9.    **Not Reasonably Accessible Documents.** The parties will comply with Fed. R. Civ. P. 26(b)(2)(B) with respect to not reasonably accessible sources.

10.    **Unsearchable Documents.** Each Producing Party will use reasonable efforts to review documents that are unsearchable and likely to be responsive.

11.    **System Files.** Each Producing Party will use reasonable efforts to filter out common system files and application executable files using the national software reference library ("NSRL") NIST hash set list.

12.    **De-Duplication.** Each Producing Party shall make reasonable efforts to globally de-duplicate exact duplicate Documents within the Producing Party's ESI data set across all custodians at the family level. Documents should be de-duplicated at the family level using MD5 hash values, or SHA-1 hash values, or comparable industry standard hash algorithm disclosed by such Party. "Exact duplicate" shall mean bit-for-bit identity of the document content with exact hash value matches. Parties shall disclose the methodology, e.g., industry standard program (including any variable parameters) being used to calculate the hash values for individual emails and email families. Any such methodology must ensure that an email that includes content in the "BCC" or other blind copy field shall not be treated as a duplicate of any otherwise identical email that does not include content in the "BCC" or other blind copy field. Emails shall be de-duplicated at the family level and standalone documents shall not be de-duplicated against attachments. The names of all custodians and non-custodial sources who were in possession of a document prior to de-duplication will be populated in the "ALLCUSTODIAN" metadata field, separated by semi-colons, in addition to a separate field of data identifying the custodian whose document is produced; such de-duplicated documents shall be deemed produced from the custodial files of each such identified custodian for all purposes in this Litigation, including for

use at deposition and trial. The original file paths of a document prior to de-duplication will be populated in the "ALLFILEPATHS" metadata field, separated by semicolons, in the order corresponding to the order of names in ALLCUSTODIANS. Hard copy documents shall not be eliminated as duplicates of ESI.

13.    **No Email Threading.** No email may be withheld from production or not logged for privilege because it is included in whole or in part in a more inclusive email; provided, however, that the Parties may use email threading for their own internal review and other internal processes.

**E.    PRODUCTION FORMATS**

1.    **File Types and Formats.** All spreadsheet files (e.g., Microsoft Excel, Corel Quattro, etc.) shall be produced as native files with TIFF placeholder images. All word processing files (e.g., Microsoft Word), presentation files (e.g., Microsoft PowerPoint), image files (e.g., .jpg, .gif), and PDF files shall be produced as native files with TIFF placeholder images where reasonably possible, unless redactions are required, in which case such files shall be produced as JPGs or TIFFs, as applicable. All media files, such as audio and video files, shall be produced as native files with TIFF placeholder images. Emails containing color shall be produced as JPGs; non-color emails shall be produced as TIFFs. The Parties will meet and confer on the production of other file types, such as CAD drawings, GIS data, materials and prototypes testing, etc.

2.    **Native Files.** Any file produced in native file format shall be given a file name consisting of a unique Bates number and, as applicable, a confidentiality designation; for example, "ABC00000002_Confidential."  For each native file produced, the production will include a *.tiff image slipsheet indicating the production number of the native file and the

confidentiality designation and stating: "File Provided Natively." To the extent that it is available, the original document text shall be provided in a document-level multi-page UTF-8 with BOM text file with a text path provided in the *.dat file; otherwise, the text contained on the slipsheet language shall be provided in the *.txt file with the text path provided in the *.dat file. Native files will be produced in a separate folder on the production media. In advance of depositions, the Parties reserve the right to produce JPG or TIFF versions, as applicable, of any previously produced native file at their discretion.

3.    **JPG/TIFF Images.** Documents containing color shall be produced in color, as single-page, 300 DPI JPG images with JPG compression and a high-quality setting as to not degrade the original image. Non-color documents shall be produced as single-page, black and white, Group IV TIFF with a resolution of 300 DPI. The Producing Party shall comply with reasonable requests by the Requesting Party to determine whether a produced black-and-white TIFF or hard copy original version contains color and to provide replacement files in those circumstances. Documents produced as TIFF/JPG images shall be named according to the Bates number of the corresponding TIFF/JPG image. Each *.tiff/*.jpg file should be assigned a unique name matching the Bates number of the corresponding image. Bates numbers and confidentiality designations should be electronically branded on each produced *.tiff/*.jpg image. These *.tiff/*jpg images should be provided in a separate folder and the number of TIFF/JPG files per folder should be limited to 1,000 files.

4.    **Hard Copy Documents.** Documents that exist in hard copy will be scanned to *.tiff or .jpg image format and produced with applicable metadata in accordance with the specifications set forth on __**Exhibit A**__. Hard copy documents that contain color shall be produced as single-page, 300 DPI JPG images with JPG compression and a high-quality setting as to not

degrade the original image. Non-color hard copy documents shall be produced as single-page, black and white, Group IV TIFF with a resolution of 300 DPI. A Producing Party's hard copy documents that are not text-searchable shall be made searchable by OCR prior to production at such Producing Party's cost. In scanning paper documents, distinct documents should not be merged into a single record, and single documents should not be split into multiple records (i.e., paper documents should be logically unitized). In the case of an organized compilation of separate documents (e.g., a binder containing several separate documents behind numbered tabs), the document behind each tab should be scanned separately, but the relationship among the documents in the compilation should be reflected in the proper coding of the beginning and ending document and attachment fields. The Parties will make their best efforts to unitize the documents correctly. If responsive documents are maintained in a file, folder, envelope, binder, notebook, or similar container used to store documents, all contents therein shall be reviewed for production and privilege. Document pages which have affixed notes, such as Post-it notes, shall be imaged with and without the note attached.

5.    **Databases and Other Data Types.** The Parties shall produce structured data and other data types in a reasonably useable format. The parties agree to meet and confer prior to collection to resolve disputes on production format for structured data or other data types. To the extent a Producing Party is constrained from producing responsive ESI because of a third-party license or because software necessary to view the ESI is hardware-dependent, the Parties shall meet and confer to minimize any expense or burden associated with the production of such documents in an acceptable format, including issues as may arise with respect to obtaining access to any such software and operating manuals. If the Parties cannot reach agreement, the matter will be decided by the Court.

6.      **Digital Photos.** All digital photographs will be produced natively.

7.      **Non-English Documents.** When documents are produced that contain languages other than English, in whole or in part, the Producing Party shall produce each such document in the original language or languages in which it was written when collected. The Producing Party has no obligation to create a translation of the documents or any portion thereof. For any foreign-language documents responsive to document requests that a Party reasonably knows as the result of a reasonable investigation have been translated into the English language using human translators or through machine translation in the ordinary course of business or for its own purposes, except to the extent such translation is protected by attorney-client or work-product privileges, the Producing Party shall produce the translation of the original document with the original. The Parties will meet and confer as necessary concerning procedures for using translations at depositions and at trial. In the event the Parties cannot reach agreement, the matter may be submitted to the Court or its designee for determination.

8.      **Embedded Files.** The Parties agree that non-substantive embedded objects, including, but not limited to, logos, icons, emoticons, and footers, may be culled from a document set (but not a document) and need not be produced as separate documents by a Producing Party (i.e., such embedded objects will be produced within the document itself, rather than as separate documents). Embedded objects or files, except for images (including, but not limited to, logos, icons, emoticons), are to be produced as family groups. Embedded files should be assigned Bates numbers that directly follow the Bates numbers on the documents within which they are embedded.

9.      **Hyperlinked Files.** If the Producing or Receiving Party identifies the existence of hyperlinked files in responsive or produced documents the Parties will engage in a meet and

confer. If hyperlinked files are discovered or disclosed after documents have been collected and produced, the Producing Party may not argue that it is too burdensome to have to recollect the documents and reserves all other proportionality arguments available to it under the Federal Rules of Civil Procedure and case law regarding producing the hyperlinked documents.

10.    **Compressed Files.** Compressed file types (e.g., .CAB, .GZ, .TAR. .Z, .ZIP) shall be decompressed in a reiterative manner to ensure that a zip within a zip is decompressed into the lowest possible compression resulting in individual files before responsiveness review or the application of any filtering or culling technologies.

11.    **Dynamic Fields.** Documents with dynamic fields for file names, dates, and times will be processed to show the field code (e.g., "[FILENAME]"), rather than the values for such fields existing at the time the file is processed.

12.    **Parent-Child Relationships.** Parent-child relationships such as the association between an attachment and its parent document, or between embedded documents and their parent, shall be preserved. Attachments should be consecutively produced with their parent.

13.    **Family Groups.** A document and all other documents in its attachment range, emails with attachments, files with extracted embedded OLE (object linking and embedding) documents all constitute family groups. If any member of a family group is produced, all members of that group must also be produced or else logged as privileged, and no such member shall be withheld from production as a duplicate.  This provision does not relate to paragraph 9 concerning hyperlinked files.  If necessary, the parties will separately meet and confer regarding family groups for hyperlinked files.

14.    **Time Zone.** All provided metadata pertaining to dates and times will be standardized to UTC or PST.

15.   **Bates Numbering.** Bates numbering should be consistent across the production, contain no special characters, and be numerically sequential within a given document. If a Bates number or set of Bates numbers is skipped, the skipped number or set of numbers should be noted with a placeholder. Attachments to documents will be assigned Bates numbers that directly follow the Bates numbers on the documents to which they were attached. In addition, wherever possible, each *.jpg or *.tiff image will have its assigned Bates number electronically "burned" onto the image.

16.   **Redactions.** A Producing Party may use redactions to protect attorney-client or work product privileges consistent with any operative Order concerning privilege that is agreed upon by the Parties and/or entered in this Litigation. Absent further order of the Court or agreement of the Parties, no redactions for relevance may be made within a produced document. To the extent that a Producing Party maintains that an otherwise responsive document contains certain highly sensitive information that should be redacted for reasons other than those permitted by this Paragraph, the Producing Party and Receiving Party shall meet and confer concerning the proposed treatment of such information. If the Parties do not agree, the Producing Party may submit the document to the Court under seal for review in camera and seek an order concerning the appropriate treatment of the disputed information. Any redactions shall be clearly indicated on the face of the document, with each redacted portion of the document stating that it has been redacted and the basis for the redaction, and a metadata field shall indicate that the document contains redactions and the basis for the redaction (e.g., "Redacted – A/C Privilege," "Redacted – AWP"). Where a responsive document contains both redacted and non-redacted content, the Parties shall produce the remainder of the non-redacted portions of the document and the text/OCR corresponding to the non-redacted portions.

a.      **Spreadsheets.** Spreadsheet files requiring redaction, including, without limitation, Microsoft Excel files, will be redacted natively.

b.      **Other Documents.** All images of redacted native files shall be processed to show and reveal all comments, revision marks, speaker notes, or other user-entered data which are visible in any view of the document in its native application. When possible, any occurrences of date/time auto-field items, including in headers and footers, will be removed and replaced with the term AUTODATE to prevent the current date from being printed. Email header information (e.g., date, subject line, etc.) should not be redacted unless it is independently privileged. The production of a document in a redacted form does not affect the Parties' obligation to timely assert and substantiate the assertion of privilege over the content in a privilege log. The Parties shall honor reasonable requests for the production of particular redacted documents in other formats where the image is not reasonably usable.

17.     **Load File Formats.** ESI will be produced with a standard Concordance (*.dat) load file format and an image load file that is in .OPT format. The Concordance (*.dat) load file shall be provided with UTF-8 encoding.

18.     **Metadata To Be Produced.** Each Producing Party shall use methods of collection and processing that preserve the integrity of document metadata. The metadata fields detailed in **Exhibit A** should be produced for each document to the extent that such information is reasonably available and accessible or, in the case of metadata created during processing such as Bates numbers, created, at the time of collection and processing, except that if a field contains privileged information, that privileged information may be redacted and noted in a corresponding privilege log.

19.    **Extracted Text and OCR.** Each document, whether produced as a native file or in JPG or TIFF format, and whether originally existing in electronic or in hard copy, shall be produced with extracted text or OCR, as described herein.

a.    **Extracted Text (Emails, Unredacted Native ESI, and Redacted Spreadsheets).** All emails, unredacted ESI, and redacted spreadsheets produced as native files, should be provided with complete document-level extracted text files. Extracted text shall include all comments, revisions, tracked changes, speaker's notes and text from documents with comments or tracked changes, and hidden and very hidden worksheets, slides, columns and rows. Text extracted from emails shall include all header information that would be visible if the email was viewed in Outlook including: (i) the individuals to whom the communication was directed ("To"); (ii) the author of the email communication ("From"); (iii) who was copied and blind copied on such email ("CC" and "BCC"); (iv) the subject line of the email ("RE" or "Subject"); (v) the date and time of the email; and (vi) the names of any attachments

b.    **OCR (Redacted ESI and Hard Copy Documents).** In the event a document, other than spreadsheets (e.g., Excel files), contains text that is to be redacted, OCR text files should be provided for any unredacted portions of the documents. Document-level OCR text files shall also be provided for all hard copy scanned documents. OCR software must be set to the highest quality setting for any previously unscanned paper documents, and reasonable quality control measures shall be used to ensure that the integrity of scanned copies of previously unscanned paper documents are preserved for OCR (e.g., pages are not angled or skewed, text is not blurred or obscured, etc.). The Parties will make reasonable efforts to OCR documents containing foreign

language text using the appropriate settings for that language, (e.g., OCR of Asian language documents must properly capture the relevant Asian characters). Settings such as "auto-deskewing" and "auto-rotation" must be turned on during the OCR process to maximize text recognition on any given page.

       c.    **Format of Extracted Text and OCR.** The extracted full text and/or OCR text for all deliverables should be in separate document-level, UTF-8 with BOM encoded TXT files provided in a separate folder. The number of TXT files per folder should be limited to 1,000 files.

    20.    **Password Protection.** In the event any document or ESI (or portion thereof) produced is password protected, the Producing Party shall make all reasonable efforts to provide the password needed to access the document or ESI.

    21.    **Production Media and Access Controls.** Documents shall be produced through secure File Transfer Protocol ("FTP") or similar secure electronic transmission ("Production Media"). Each piece of Production Media shall be encrypted and assigned a production number or other unique identifying label ("Production Volume Number") corresponding to the date of the production of Documents on the Production Media as well as the sequence of the material in that production, and shall include: (a) the name of the Litigation and the case number; (b) the identity of the Producing Party; (c) the production date; (d) the Bates Number range of the materials contained on such Production Media item; and (e) the Production Volume Number of the Production Media. The Producing Party shall accompany all Production Media with a transmittal cover letter that includes (1) a high-level description of the types of documents included in the production, (2) the date of production, (3) the production wave or volume, and (4) the Bates ranges for the documents encompassed within the production.  All production

volumes uploaded via this file sharing document repository shall remain available for download for at least 15 calendar days. A Producing Party shall, within a reasonable time, accommodate requests from another Party or Parties that documents be reposted to the FTP site.

22.     **Encryption.** To maximize the security of information in transit, any media or file sharing electronic document repository on which documents are produced must be encrypted. Production deliverables provided via FTP shall be made available on a secured FTP connection with AES 256-bit encryption. In such cases, the Parties shall transmit the encryption key or password to a requesting Party, under separate cover, contemporaneously with sending the encrypted media, or correspondence indicating the availability of the encrypted FTP deliverables.

23.     **Replacements.** All files that are replaced for any reason must be annotated with an "R" designation appended to the Bates prefix. A cross-reference file will be provided identifying the document's original Bates and its replacement Bates number.

24.     **Exception Files.** The Parties will use reasonable efforts and standard industry practices to address documents that present imaging or form production problems (including encrypted and/or protected files identified during the processing of ESI) ("Exception Files").

25.     **Proprietary Software.** To the extent that relevant ESI cannot be rendered or reviewed without the use of proprietary software, the Parties shall meet and confer to minimize any expense or burden associated with the production of such documents in an acceptable format, including issues as may arise with respect to obtaining access to any such software and operating manuals.

26.     **Privilege Logs**. To the extent that documents, in whole or in part, are henceforth withheld from production on the basis of attorney-client privilege, the work product doctrine, or

some other protection, the producing party shall produce a privilege log as set forth below within thirty (30) days of the date by which the documents from the custodian or non-custodial source would otherwise have been produced if not for the claim of privilege or protection, unless another time is agreed by the parties. Privilege logs shall be produced on a rolling basis so as not to delay production of privilege logs.

    a.   The Parties are not required to log privileged documents that are created on or after April 29, 2024. Additionally, the Relator is not required to log privileged documents exchanged solely between Relator/outside counsel and the Government, including Department of Justice, California Insurance Commissioner, California Attorney General's Office and agents thereof.

    b.   Privilege logs shall be produced in Excel format that allows for text searching, sorting, and organization of data, and shall be produced either: (a) in a cumulative manner, so that each subsequent privilege log includes all privilege claims from prior logs; or (b) in installments using a consistent format so that the installments can be merged into a cumulative Excel spreadsheet by the Receiving Parties. Should a Designating Party serve an amended or modified version of an existing privilege log, that Designating Party shall serve either an accompanying cover letter detailing the amendments or a redline comparison of the amended or modified privilege log to the previously served privilege log. Parties may redact information that they assert is privileged. All documents redacted for privilege shall be logged in a separate tab of the Excel privilege log.

    c.   The producing party will provide a log of documents withheld for privilege containing the following:

1. A unique identifying number (separate from Bates numbering) [privilege identification number] for documents withheld or the Bates number for documents redacted for privilege;

2. If the document is the parent or child of a family of documents, some of which have been produced and others withheld, the log should identify the Bates numbers of the first document (i.e., the parent, or if the parent is withheld the first attachment) produced from the family in which the logged document was withheld;

3. The date of the document or communication;

4. The authors and recipients of the document or communication, based on the From (or Author), To, CC and BCC fields from electronically-generated metadata associated with the document;

5. The subject and/or title of the document, based on the Subject field (or other similar category) from electronically-generated metadata associated with the document, to the extent applicable and reasonably available, understanding that the Designating Party may eliminate some or all of this

information to the extent that it has a good faith belief that it would reveal information that is itself privileged or protected.

6. Indication (e.g. ^ or +) next to the name of the individuals, sender (or author) or recipient, of the document/communication acting in the capacity of attorney (including paralegals or other legal staff carrying out a legal function for an attorney);

7. The name of or other identifying information as to the produced source file in which the document subject to a privilege claim was found (and listing of the primary custodian constitutes sufficient identifying information);

8. The specific privilege(s) or protection(s) claimed as a basis for withholding an otherwise discoverable document; and

9. A narrative field to provide adequate context or detail for the privilege claim to be assessed by a Receiving Party.

d. To the extent that Listserv or group email addresses are identified on the privilege log, the Designating Party shall work in good faith to identify individuals and/or groups of individuals and/or groups of individuals who make up such Listserv or group email.

e. If an attachment (parent or child) to a document or communication is being withheld, such attachment(s) shall be identified in the privilege log as separate entries. Families of documents shall be logged together in sequence with the

parent document following by any other withheld documents in the document family.

    f.   The Parties can challenge a designating party's claims of privilege or work product protection at any time. The Parties shall meet and confer in good faith, and endeavor to expeditiously resolve any disputes before submitting such disputes to the Court for determination.

**E.    MISCELLANEOUS PROVISIONS**

    1.    **Impact of Order on Other Obligations.** Nothing in this Order shall affect the preservation requirements set forth in previous Orders, subsequent Orders, or any other preservation obligations of the Parties for these proceedings or for other purposes, such as pursuant to court order, administrative order, statute, or in response to other anticipated litigation. By preserving documents or ESI for the purpose of this litigation, the Parties are not conceding that such material is discoverable, nor are they waiving any claim of privilege.

    2.    **Third-Party Documents.** A Party that issues a Non-Party subpoena ("Issuing Party") shall include a copy of this ESI Order with the subpoena and state that: (a) the subpoenaed Non-Party should produce documents in response to the subpoena to all Parties; and (b) the Parties to this Litigation have requested that Non-Parties produce documents in accordance with the specifications set forth herein. If the subpoenaed Non-Party produces documents to the Issuing Party but does not produce those documents to other Parties, the Issuing Party shall produce such documents to those other Parties within 14 days of receiving the documents, except where the documents are to be used in a deposition, in which case the Issuing Party shall produce such documents to all other Parties within 14 days of receiving the documents or no later than 5 days

prior to the deposition (whichever occurs first), or as soon as reasonably practicable if such production occurs thereafter. Nothing in this Order is intended or may be interpreted to narrow, expand, or otherwise affect the rights of the Parties or Non-Parties to object to a subpoena. If the Non-Party production is not Bates-stamped, the Parties will meet and confer to agree upon a format for designating the documents with a unique Bates Number prefix.

       3.    **Reproductions.** Notwithstanding any provisions to the contrary, reproduction of discrete sets of documents from another litigation, arbitration, government inquiry, Civil Investigative Demand, or other matter, or produced as part of regulatory processes ("Other Productions"), may be reproduced in the same manner and form as originally produced in the other matter; provided, however, that a Producing Party will reproduce documents in a different format for good cause shown. This provision does not waive the right of a Party to object to any requests for reproduction of files from Other Productions. To the extent that any documents produced in Other Productions are withheld from any Producing Party's production, the Producing Party shall identify the basis on which the document is being withheld, including any impacted custodians, document categories, or other basis on which the document is being withheld, to enable the Parties to confer about the potential later production of such documents.

       4.    **Good Faith.** The Parties will act in good faith as required by law and use these procedures to identify and reduce the potential for disputes.

       5.    **Continuing Obligations.** The Parties are aware of the importance the Court places on cooperation and commit to continue to consult and cooperate reasonably as discovery proceeds. No Party may seek judicial relief from the Court or its designee unless it first has conferred with the applicable Producing or Requesting Party.

6. **Protective Order.** All documents produced by the Parties will be subject to the terms of any protective order entered in this Litigation.

7. **Reservation of Rights.** Nothing in this ESI Order may be construed or interpreted to waive any objections to the production, discoverability, admissibility, or confidentiality of documents and ESI, or to constitute an independent motion for an appropriate protective order pursuant to the Federal Rules. The Parties retain the right, upon reviewing any productions made by another Party in this Litigation or conducting other investigation and discovery, to request that documents or ESI from additional non-custodial data sources or custodians be produced. The Parties will meet and confer regarding such requests prior to any search or production related thereto. Nothing in this Order shall be deemed to be a waiver of any Party's right to reasonably seek agreement from the other Parties, or a Court ruling, to modify proposed or previously agreed to search terms, techniques, or tools (including any proposed as supplements).

## F.  MODIFICATION

This ESI Order may be modified by a Stipulated Order of the Parties or by the Court for good cause shown.

**IT IS SO STIPULATED**, through Counsel of Record.

| | |
|---|---|
| **SEEGER WEISS LLP**<br>By:  /s/   Stephen A. Weiss<br>   Stephen A. Weiss (admitted PHV)<br>Justin M. Smigelsky (admitted PHV)<br>55 Challenger Road<br>Ridgefield Park, NJ 07660<br>(973) 639-9100<br>sweiss@seegerweiss.com<br>jsmigelsky@seegerweiss.com | **KING & SPALDING LLP**<br>By:  /s/   Stephanie F. Johnson<br>   Stephanie F. Johnson (admitted PHV)<br>Michael E. Paulhus (admitted PHV)<br>Jennifer S. Lewin (Bar No. 260462)<br>1180 Peachtree Street NE, Suite 1600<br>Atlanta, GA 30301<br>(404) 527-5600<br>mpaulhus@kslaw.com<br>sfjohnson@kslaw.com<br>jlewin@kslaw.com |

Shauna B. Itri
**SEEGER WEISS LLP**
325 Chestnut Street, Suite 917
Philadelphia, PA 19106
(215) 564-2300
sitri@seegerweiss.com
*Attorneys for Plaintiff-Relator*
*CA Challenger LLC*
Peter Kaufman
**PANISH SHEA BOYLE RAVIPUDI LLP**
11111 Santa Monica Blvd. #700
Los Angeles, CA 90025
(310) 477-1700
kaufman@psblaw.com
*Local Counsel Pursuant to L.R. 83-2.1.3.4*

Peter A. Strotz
**KING & SPALDING LLP**
633 West 5th Street, Suite 1600
Los Angeles, CA 90071
(213) 443-4363
pstrotz@kslaw.com
*Attorneys for Defendants*
*Emanate Health and Emanate Health Hospice*

**IT IS SO ORDERED**.

Dated: November 13, 2024

_____
GAIL J. STANDISH
United States Magistrate Judge

4876-1